IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

RASHAWN HARRIS,

        Plaintiff,

    vs.                                      Civil Action 2:14-cv-1226
                                                Judge Frost
                                              Magistrate Judge King

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

<u>REPORT AND RECOMMENDATION</u>

## I.   Background

This is an action instituted under the provisions of 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security denying plaintiff's applications for a period of disability, disability insurance benefits, and supplemental security income. This matter is before the Court for consideration of *Plaintiff's Statement of Errors* ("*Statement of Errors*"), Doc. No. 13, and the *Defendant's Memorandum in Opposition*, Doc. No. 19.

Plaintiff Rashawn Harris protectively filed his applications for benefits on February 27, 2012, alleging that he has been disabled since August 1, 2004. *PAGEID* 231, 397-410. The claims were denied initially and upon reconsideration, and plaintiff requested a *de novo* hearing before an administrative law judge.

An administrative hearing was held on February 26, 2013, at which plaintiff, represented by counsel, appeared and testified, as did Timothy Shaner, who testified as a vocational expert. *PAGEID* 246. In

a decision dated March 29, 2013, the administrative law judge concluded that plaintiff was not disabled from August 1, 2004, through the date of the administrative decision. *PAGEID* 231-41. That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on June 26, 2014. *PAGEID* 32-35.

Plaintiff was 45 years of age on the date of the administrative decision. *See PAGEID* 241, 397. Plaintiff was last insured for disability insurance purposes on March 31, 2010. *PAGEID* 233. Plaintiff has at least a high school education, is able to communicate in English, and has past relevant work as a vender, grill cook helper, food preparer, and food server. *PAGEID* 240. He has not engaged in substantial gainful activity since March 13, 2012, the date plaintiff filed his application for supplemental security income. *PAGEID* 234.

## II.  Administrative Hearing

Plaintiff testified at the administrative hearing that he has pain in his lower back and left leg resulting from an October 2011 accident in which he was hit by a car while riding a bicycle. *PAGEID* 251, 254-55. Plaintiff has to alternate between sitting and standing, because engaging in either activity for too long causes pain in his left leg. *PAGEID* 252. Plaintiff is unable to get out of bed a couple days per week because of pain. *PAGEID* 258. Lying in the fetal position helps relieve the pain, but that also causes headaches that last one to four hours. *PAGEID* 258, 261. Plaintiff can walk one or two blocks, using a cane, before he must stop. *PAGEID* 255. He cannot

bend at the waist, squat, or lift anything.  *PAGEID* 258-59. His pain has not been alleviated by injections, chiropractic treatment, or physical therapy.  *PAGEID* 256-57.  Cold or wet weather also aggravate his pain.  *PAGEID* 258.  Plaintiff does not currently take pain medication because he cannot afford it.  *PAGEID* 260.  When plaintiff did take medication, the medication made him drowsy and interfered with his ability to pay attention at work.  *Id.*

Plaintiff testified that he also has constant numbness and tingling in his left hand from a gunshot wound that severed the medial nerve.  *PAGEID* 260.  He cannot lift more than two or three pounds and he has no ability to grip when his hand is cold.  *Id.*  Plaintiff's fiancée helps get him dressed and does the cooking and cleaning.  *PAGEID* 261.

The vocational expert was asked to assume a claimant with plaintiff's vocational profile and the residual functional capacity ("RFC") eventually found by the administrative law judge.  *PAGEID* 266-67.  According to the vocational expert, such an individual could not perform plaintiff's past relevant work as a vendor, food preparer, grill cook, and food server, but could perform such jobs as packager, assembler, and inspector.  *Id.*

## III. Administrative Decision

The administrative law judge found that plaintiff did "not establish[] the existence of any medically-determinable impairments through March 31, 2010, the date of last insured."  *PAGEID* 233.  The administrative law judge therefore denied plaintiff's claim for

disability insurance benefits at step two of the sequential evaluation process.

With regard to plaintiff's claim for supplemental security income, the administrative law judge found that plaintiff's severe impairments consist of lumbar radiculitis, mild degenerative changes at the L4-L5 and L4-S1 disc levels, without critical central spinal stenosis or critical narrowing of the neuroforamina or nerve root impingement, thoracic degenerative disc disease, and tobacco abuse. *PAGEID* 234. The administrative law judge also found that plaintiff's impairments neither meet nor equal a listed impairment and leave plaintiff with the RFC to

> perform sedentary work as defined in 20 CFR 416.967(a) such that the claimant can lift and carry 10 pounds occasionally, sit for a total of 6 hours in an 8-hour workday, with normal breaks, stand and walk for a total of 2 hours in an 8-hour workday, with normal breaks and for no more than 15 minutes at a time, and push and pull within these limitations. He can occasionally climb ramps and stairs, but never ladders, ropes, or scaffolds. In addition, the claimant can occasionally stoop.

*PAGEID* 234-35. Although this RFC precludes the performance of plaintiff's past relevant work as a vender, grill cook helper, food preparer, and food server, the administrative law judge relied on the testimony of the vocational expert to find that plaintiff is nevertheless able to perform a significant number of jobs in the national economy, including such representative jobs as packager, assembler, and inspector. *PAGEID* 240-41. Accordingly, the administrative law judge concluded that plaintiff was not disabled

4

within the meaning of the Social Security Act from August 1, 2004, through the date of the administrative decision.  *PAGEID* 241.

## IV.  Discussion

Pursuant to 42 U.S.C. § 405(g), judicial review of the Commissioner's decision is limited to determining whether the findings of the administrative law judge are supported by substantial evidence and employed the proper legal standards.  *Richardson v. Perales*, 402 U.S. 389 (1971); *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005).  Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *See Buxton v. Haler*, 246 F.3d 762, 772 (6th Cir. 2001); *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981).  This Court does not try the case *de novo*, nor does it resolve conflicts in the evidence or questions of credibility.  *See Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, this Court must examine the administrative record as a whole.  *Kirk*, 667 F.2d at 536.  If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if this Court would decide the matter differently, *see Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion.  *Longworth,* 402 F.3d at 595.

In his *Statement of Errors*, plaintiff first argues that the administrative law judge erred in failing to find a severe impairment prior to the date last insured for purposes of disability insurance benefits and in failing to find that plaintiff's other impairments are severe. *Statement of Errors*, pp. 5-7.  Plaintiff insists that he "has other severe impairments, including pain in the MTP joint (Tr 777). The post hearing records show Herniated Nucleus Pulposis and lumbar radiculopathy. (Tr 192) disc herniation.  The claimant also has headaches (Tr. 573, 634) and cervical spine issues (Tr 572-678)." *Id.* at p. 6 [sic].

A "severe impairment" is defined as an impairment or combination of impairments "which significantly limits [the claimant's] physical or mental ability to do basic work activities."  20 C.F.R. §§ 404.1520(c), 416.920(c).  Basic work activities include "the abilities and aptitudes necessary to do most jobs," including physical functions "such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling."  20 C.F.R. §§ 404.1520(c), 416.920(c).  The United States Court of Appeals for the Sixth Circuit has held that an impairment is not severe only if it is a "'slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience.'"  *Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 89-90 (6th Cir. 1985) (quoting *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984)).  The burden is on the claimant to establish the existence of a severe

impairment. *Bowen v. Yuckert*, 482 U.S. 137 (1987). Nevertheless, if the effect of the claimant's impairments is not clear, the administrative law judge should continue the five-step evaluation. SSR 85-28, 1985 WL 56856 (Jan. 1, 1985). The goal of the step-two severity inquiry is "to screen out totally groundless claims." *Farris*, 773 F.2d at 89.

In determining that plaintiff did not have a severe impairment prior to March 31, 2010, the administrative law judge noted that plaintiff's "impairments and limitations appear[ed] to be largely due to a bicycle accident in October 2011," which "was well after his date last insured." *PAGEID* 233. The administrative law judge also noted that the medical evidence was derived from dates subsequent to the date last insured and that the state agency medical consultants "opined that there is no medical evidence from the claimant's alleged onset date of October 13, 2004 to March 31, 2010." *PAGEID* 233-34. Because he found that there was "no basis for reasonably relating back the evidence from after his date last insured to find that he had a severe impairment or combination of impairments by his date last insured," the administrative law judge found that plaintiff did not have a severe impairment prior to the date on which he was last insured. *Id*. These findings enjoy substantial support in the record, as cited by the administrative law judge, and plaintiff has referred to no evidence to suggest that he had a severe impairment prior to the date on which he was last insured. Moreover, the "post hearing records show[ing] Herniated Nucleus Pulposis and lumbar

radiculopathy," cited by plaintiff, *Statement of Errors*, p. 6, were submitted after the administrative law judge's decision and, thus, cannot be considered by this Court for purposes of substantial evidence review. *See Foster v. Halter,* 279 F.3d 348, 357 (6th Cir. 2001).

Plaintiff also argues that the administrative law judge erred, in evaluating plaintiff's claim for supplemental security income, by not including in plaintiff's recognized severe impairments plaintiff's claimed "pain in the MTP joint," "Herniated Nucleus Pulposis and lumbar radiculopathy," and headaches. *Statement of Errors*, p. 6. The finding of a severe impairment at step two of the sequential analysis is, however, only a threshold determination; where the administrative law judge has found at least one severe impairment, the sequential analysis will continue and the failure to include other severe impairments is not itself reversible error. *See Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987). In the case presently before the Court, the administrative law judge found at step two of the sequential analysis that plaintiff's severe impairments consist of lumbar radiculitis, mild degenerative changes at the L4-L5 and L4-S1 disc levels, without causing critical central spinal stenosis or critical narrowing of the neuroforamina or nerve root impingement, thoracic degenerative disc disease, and tobacco abuse. *PAGEID* 234. The administrative law judge's failure to find additional severe impairments at step two is "legally irrelevant," *see McGlothin v. Comm'r of Soc. Sec.*, 299 F. App'x 516, 522 (6th Cir. 2008), so long

8

as the administrative law judge continued the sequential analysis and considered plaintiff's severe and non-severe impairments in determining plaintiff's residual functional capacity. *See id.*; *O'Neill v. Comm'r of Soc. Sec.*, No. 1:11-cv-1181, 2013 WL 1436648, at *5 (W.D. Mich. Apr. 9, 2013); *Dodson v. Comm'r of Soc. Sec.*, No. 1:12-cv-109, 2013 WL 4014715, at *2 (E.D. Tenn. Aug. 6, 2013). Here, the administrative law judge found that plaintiff suffers from severe impairments and, continuing the sequential analysis, considered plaintiff's severe and non-severe impairments, including his lower extremity and back pain and headaches, in determining plaintiff's RFC. *See PAGEID* 236-39. Accordingly, the administrative law judge did not err in his step two determination. *See McGlothin*, 299 F. App'x at 522; *O'Neill*, 2013 WL 1436648 at *5; *Dodson*, 2013 WL 4014715 at *2.

Plaintiff next argues that the administrative law judge erred in evaluating the medical opinions of record. Plaintiff specifically argues, first, that the administrative law judge erred in evaluating the opinion of treating physician John G. O'Handley, M.D. *Statement of Errors*, pp. 7-9. According to plaintiff, the administrative law judge failed to provide "sufficient reasons" for discounting Dr. O'Handley's opinion and failed to consider the appropriate factors. *Id.* Plaintiff also argues that Dr. O'Handley's opinion is supported by a December 12, 2012 MRI that shows degenerative changes of the lumbar spine, disc desiccation, and high and posterior protrusion of the disc. *Id.*

9

The opinion of a treating provider must be given controlling weight if that opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "not inconsistent with the other substantial evidence in [the] case record."  20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).  Even if the opinion of a treating provider is not entitled to controlling weight, an administrative law judge is nevertheless required to evaluate the opinion by considering such factors as the length, nature and extent of the treatment relationship, the frequency of examination, the medical specialty of the treating physician, the extent to which the opinion is supported by the evidence, and the consistency of the opinion with the record as a whole.  20 C.F.R. §§ 404.1527 (c)(2)-(6), 416.927(c)(2)-(6); *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).  Moreover, an administrative law judge must provide "good reasons" for discounting the opinion of a treating provider, *i.e.*, reasons that are "'sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007) (quoting SSR 96-2p, 1996 WL 374188, at *5 (July 2, 1996)).  This special treatment afforded the opinions of treating providers recognizes that

> "these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from

reports of individual examinations, such as consultative examinations or brief hospitalizations."

*Wilson,* 378 F.3d at 544 (quoting 20 C.F.R. § 404.1527(d)(2)).

Dr. O'Handley completed a residual functional capacity questionnaire on January 31, 2013 in which he opined that plaintiff could frequently reach above shoulder level, occasionally lift or carry 10 pounds, occasionally squat, and occasionally climb with the assistance of a cane. *PAGEID* 830. Plaintiff would be unable to use his left hand for fine manipulation and he would be unable to use his right foot for repetitive movements or operation of foot controls. *Id.* Plaintiff had mild restrictions of activities involving unprotected heights, being around machinery, exposure to marked changes in temperature and humidity, and exposure to dust, fumes, and gases. *PAGEID* 831. According to Dr. O'Handley, plaintiff could not return to full time employment. *Id.* Dr. O'Handley opined that plaintiff's limitations had begun in October 2011 and would last more than 12 months. *Id.* Dr. O'Handley's opinion consists primarily of check-the-box responses; his "comments" indicate that "Patient has been seen at OSU back clinic." *Id.*

The administrative law judge characterized Dr. O'Handley as a treating source and evaluated his opinion as follows:

> The undersigned affords minimal weight to the opinion of Dr. John G. O'Handley, the claimant's treating physician. In January 2013, Dr. O'Handley assessed the claimant's physical residual functional capacity. (Exhibit 12F). As interpreted by counsel, Dr. O'Handley found that over an entire 8 hour work day, the claimant could sit for 20 minutes, stand for 20 minutes and walk for 1-2 blocks and could not use the left hand for fine manipulating. In addition he checked off that the claimant would be unable

11

to engage in full time employment and would be disabled for 12 continuous months. He could occasionally lift 10 pounds and could climb with a cane. Despite his status as the claimant's treating physician, Dr. O'Handley's opinion is inconsistent with the record as a whole.

Initially it must be noted that finding that the claimant could sit for 20 minutes, stand for 20 minutes and walk for 1-2 blocks over the course of an entire work day is preposterous. Such limitations would leave the claimant essentially bed bound and are inconsistent with even his appearing at the hearing. Also Dr. O'Handley simply checked off boxes giving no explanation for his findings other than that the claimant is being treated elsewhere for his back, which would suggest that he is not in a particularly good position to evaluate the claimant's limitations. The reason for giving deference to a treating physician opinion is that the physician by reason of the familiarity accompanying the treatment status is in the best position to evaluate the limitations. That does not appear to be the case here.

Further, in order for a treating physician's opinion to be given controlling weight, it must be well supported by medically acceptable clinical and laboratory diagnostic techniques. *See*, Social Security Ruling 96-2p. Dr. O'Handley's opinion is not well supported by medically acceptable clinical and laboratory diagnostic techniques. As discussed above, physical examination notes fail to support the notion that the claimant is limited to the extent that Dr. O'Handley suggests. Specifically, examination findings revealed that the claimant was consistently not in acute distress and grossly intact neurologically, with no new focal sensory or motor deficits noted – despite limited lumbar range of motion and an antalgic gait with a cane. (Exhibit 9F).

The claimant was also assessed as having full strength bilaterally in his lower extremities, notwithstanding some pain throughout. (Id.). An inspection of the cervical spine showed no palpable tenderness or step deformity and full range of motion in the cervical spine. (Id.). An inspection of the claimant's back was assessed as normal, as his muscle tone was normal without spasm, the detection of some paraspinal tenderness diffusely in the lumbar spine, and noted limited range of motion with pain. (Exhibit 11F). The claimant's physician also noted that it was difficult to evaluate the claimant's strength due to poor effort, but he did display full strength in both lower extremities. (Id.). Moreover, despite the complaints of

12

chronic back pain, the claimant testified that he is currently not taking any medications for the symptoms. (Hearing Testimony).

The objective medical evidence also failed to support Dr. O'Handley's opinion. X-rays of the claimant's cervical, thoracic, and lumbar spine showed no acute fracture or subluxation of the cervical spine, stable degenerative disc disease at the L4-5 and L5-S1 levels, mild endplate degenerative changes of the thoracic and lumbar spine without evidence of compression fracture, mild degenerative changes at the T12-L1 and L1-L2 levels, and stable facet joints – despite arthritic changes in the sacroiliac joints and some multilevel degenerative changes of the cervical spine. (Exhibits 1F and 9F). A MRI of the claimant's lumbar spine revealed only mild degenerative changes at the L4-5 and L4-S1 disc level, without causing critical central spinal stenosis or critical narrowing of the neuroforamina or nerve root impingement. (Exhibits 10F and 11F). The spinal cord was also assessed as normal, and bone marrow was evaluated as unremarkable. (Id.).

Thus, Dr. O'Handley's physical residual functional capacity assessment fails to reveal the type of significant clinical and laboratory abnormalities one would expect if the claimant were limited to anywhere near the extent he described – and the doctor did not specifically address this weakness. There are no other opinions from an examining, treating or reviewing medical source that support the extreme limitations described by Dr. Handley. Accordingly, the undersigned finds Dr. O'Handley's opinion merits limited weight. His limitation to lifting 10 pounds is adopted. Since this Administrative Law Judge was unsure how the claimant could climb with a cane, as indicated by Dr. O'Handley, this residual functional capacity eliminates any climbing of ropes, ladders and scaffolds and reduced climbing ramps and stairs to an occasional basis. His limitations on sitting, standing, walking and using his left hand, as interpreted by counsel, are not adopted for the numerous reasons set out above.

*PAGEID* 238-39.

The administrative law judge did not violate the treating physician rule in evaluating Dr. O'Handley's opinion. The administrative law judge's analysis is sufficiently specific as to the weight given to Dr. O'Handley's opinion and the reasons for assigning

that weight.  The administrative law judge categorized Dr. O'Handley as a treating physician, but discounted his opinion because it was "inconsistent with the record as a whole" and "not well supported by medically acceptable clinical and laboratory diagnostic techniques." *Id.*  These findings enjoy substantial support in the record, as cited by the administrative law judge.  *See id.*  Moreover, it is evident that the administrative law judge considered the appropriate factors in evaluating Dr. Handley's opinion.  Under the circumstances, a formulaic recitation of factors is not required.  *See Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551 (6th Cir. 2010) ("If the ALJ's opinion permits the claimant and a reviewing court a clear understanding of the reasons for the weight given a treating physician's opinion, strict compliance with the rule may sometimes be excused.").

Plaintiff also argues that the administrative law judge erred by relying on the opinion of state agency reviewing physician William Bolz, M.D., because Dr. Bolz reviewed an incomplete record. Plaintiff's argument is not well taken.

Dr. Bolz reviewed the record and completed a residual functional capacity assessment on September 13, 2012.  *PAGEID* 206-08.  Dr. Bolz opined that plaintiff could lift and carry 20 pounds occasionally and 10 pounds frequently, stand and/or walk about six hours in an eight-hour workday, and sit about six hours in an eight-hour workday. *PAGEID* 207.  Dr. Bolz also opined that plaintiff could occasionally

stoop.  *Id*.  The administrative law judge evaluated Dr. Bolz's opinion

as follows:

> In September 2012, Dr. Bolz also evaluated the claimant's
> exertional, postural, manipulative, visual, communicative,
> and environmental limitations over the course of an eight-
> hour workday.  (Exhibit 5A).   After reviewing the
> evidentiary record, Dr. Bolz surmised that the claimant
> possesses the exertional ability to lift 20 pounds
> occasionally, 10 pounds frequently, stand and walk for a
> total of 6 hours in an 8-hour workday, with normal breaks,
> sit for a total of 6 hours in an 8-hour workday, with
> normal breaks, and unlimited pushing and pulling.  (Id.).
> He also concluded that the claimant has postural
> limitations in the area of stooping.  (Id.).  Pursuant to
> the consistency of their opinions with the record as a
> whole, the undersigned finds Dr. Bolz's opinions are
> persuasive, and merit significant weight to the extent it
> supports this residual functional capacity.   While this
> residual functional capacity is slightly more restrictive,
> this Administrative Law Judge had the advantage of hearing
> the claimant's testimony and seeing all the evidence.  Dr.
> Bolz's opinon that the claimant can perform light work also
> includes the ability to perform sedentary work.  *See*, 20
> CFR 416.967.   As such it is fully supportive of this
> residual functional capacity.

*PAGEID* 237-38.  The administrative law judge did not err in evaluating

Dr. Bolz's opinion.

> Social Security Ruling 96-6p provides, in part:
>
> 1. Findings of fact made by State agency medical and
> psychological consultants and other program physicians and
> psychologists regarding the nature and severity of an
> individual's impairment(s) must be treated as expert opinion
> evidence of nonexamining sources at the administrative law
> judge and Appeals Council levels of administrative review.
>
> 2. Administrative law judges and the Appeals Council may not
> ignore these opinions and must explain the weight given to
> these opinions in their decisions.

SSR 96-6p, 1996 WL 374180 (July 2, 1996).  The Ruling does not require

an administrative law judge to reject a state agency medical opinion

when the claimant continues treatment after the opinion was formed or

when additional medical records are generated after the opinion is rendered.  "[T]he regulations provide only that an [administrative law judge] should give more weight to an opinion that is consistent with the record as a whole." *Williamson v. Comm'r of Soc. Sec.*, No. 1:11-cv-828, 2013 WL 121813, at *7 (S.D. Ohio Jan. 9, 2013) (citing 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4)).  It is true that remand may be appropriate where the administrative law judge relied on an opinion made without the benefit of substantial evidence generated after the date of the opinion. *See e.g.*, *Ford v. Astrue*, No. 2:11-cv-1139, 2013 WL 372464, at *6 (S.D. Ohio Jan. 30, 2013) *report and recommendation adopted sub nom. Ford v. Colvin*, 2:11-cv-1139, 2013 WL 765654 (S.D. Ohio Feb. 28, 2013)).  However, this is not such a case.  Notably, plaintiff has referred to no evidence in support of his argument.  Moreover, the administrative law judge had the opportunity to review the entire record, the RFC found by the administrative law judge is more restrictive than that suggested by Dr. Bolz and, although the administrative law judge relied on Dr. Bolz's opinion, he discounted the opinion to a degree because "this Administrative Law Judge had the opportunity of hearing the claimant's testimony and seeing all the evidence." *PAGEID* 237-38. The Court finds no error in this regard.

Plaintiff next argues that the administrative law judge erred in his credibility determination.  Plaintiff specifically argues that the administrative law judge failed to note portions of plaintiff's testimony, including that plaintiff receives assistance and personal care from his fiancée, that plaintiff suffers from "side effects of

pain medication as well as the effects of cold and wet weather," and that plaintiff exhibited pain at the administrative hearing. *Statement of Errors*, pp. 12-13. Plaintiff argues that his past cocaine use is not relevant, that the administrative law judge failed to consider that plaintiff could not afford medication, and that the activities of daily living cited by the administrative law judge are not inconsistent with disability. *Id*.

A claimant's subjective complaints must be supported by objective medical evidence in order to serve as a basis for a finding of disability. *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1234 (6th Cir. 1993). *See also* 42 U.S.C. § 423(d)(5)(A). In evaluating subjective complaints, it must be determined whether there is objective medical evidence of an underlying medical condition. *Stanley v. Sec' of Health & Human Servs.*, 39 F.3d 115, 117 (6th Cir. 1994). If so, then the evaluator must determine (1) whether objective medical evidence confirms the severity of the complaint arising from the condition; or (2) whether the objectively established medical condition is of such severity that it can reasonably be expected to produce the alleged complaint. *Id.; Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986).

In evaluating a claimant's credibility, an administrative law judge should consider the objective medical evidence and the following factors:

1. The individual's daily activities;

2. The location, duration, frequency, and intensity of the individual's pain or other symptoms;

17

3. Factors that precipitate and aggravate the symptoms;

4. The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;

5. Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;

6. Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and

7. Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

SSR 96-7, 1996 WL 374186 (July 2, 1996). The administrative law judge's credibility determination is accorded great weight and deference because of the administrative law judge's unique opportunity to observe a witness's demeanor while testifying. *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (citing *Gaffney v. Bowen*, 825 F.2d 98, 973 (6th Cir. 1987)). However, credibility determinations must be clearly explained. *See Auer v. Sec'y of Health & Human Servs.*, 830 F.2d 594, 595 (6th Cir. 1987). If the administrative law judge's credibility determinations are explained and enjoy substantial support in the record, a court is without authority to revisit those determinations. *See Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994); *Beavers v. Sec'y of Health, Educ. & Welfare*, 577 F.2d 383, 386-87 (6th Cir. 1978).

In the case presently before the Court, the administrative law judge summarized plaintiff's subjective complaints and his testimony at the administrative hearing, but found that plaintiff's "allegations

18

concerning the intensity, persistence and limiting effects of these symptoms are not consistent with the evidence as a whole, persuasive or credible to the extent they are inconsistent with [the] residual functional capacity finding." *PAGEID* 236-39.  As plaintiff argues, the administrative law judge's summary of plaintiff's subjective complaints and hearing testimony did not articulate all of plaintiff's complaints.  However, the administrative law judge noted that, "if all of the allegations were fully credible, the claimant would not be able to work." *PAGEID* 236.  The administrative law judge then evaluated the medical evidence and explained why plaintiff's complaints were "inconsistent with the record as a whole." *PAGEID* 236-37.  The administrative law judge also noted several factors that "reflect disfavorably on the claimant's allegations:"

> As for the claimant's allegations, a review of the claimant's work history shows that the claimant worked only sporadically prior to the alleged disability onset date, which raises a question as to whether the claimant's continuing unemployment is actually due to medical impairments. (Exhibits 4D and 9D).  The evidence presented also indicates that the claimant's questionable effort during physical examinations does not enhance his allegations (Exhibit 11F).  Moreover, the record indicates that the claimant was discharged from physical therapy for testing positive for illegal drugs, to wit cocaine. (Exhibit 11F and Hearing Testimony).  He is not taking any medication (Testimony).  The claimant testified that he cannot afford a doctor, but the evidence shows that he has been receiving treatment (Exhibits 1F to 11F).  Taken together these factors reflect disfavorably on the claimant's allegations.

*PAGEID* 239.  The administrative law judge's credibility determination is clearly explained, and his analysis enjoys substantial support in the record.  This Court will not – and indeed may not - revisit that

credibility determination. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003).

In a related argument, plaintiff argues that the administrative law judge erred in relying on the testimony of the vocational expert. *Statement of Errors*, pp. 13-14. Plaintiff specifically argues that the hypothetical posed to the vocational expert was incomplete because it was based on improper RFC and credibility determinations. *Id.*

"In order for a vocational expert's testimony in response to a hypothetical question to serve as substantial evidence in support of the conclusion that a claimant can perform other work, the question must accurately portray a claimant's physical and mental impairments." *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 516 (6th Cir. 2010). "Hypothetical questions, however, need only incorporate those limitations which the [administrative law judge] has accepted as credible." *Parks v. Soc. Sec. Admin.*, 413 F. App'x 856, 865 (6th Cir. 2011) (citing *Casey*, 987 F.2d at 1235).

The administrative law judge posed to the vocational expert a complete hypothetical question that incorporated all of plaintiff's impairments as found by the administrative law judge. The vocational expert responded that such an individual could not perform plaintiff's past relevant work as a vendor, food preparer, grill cook, and food server, but could perform a significant number of jobs in the national economy, including such representative jobs as packager, assembler, and inspector. *PAGEID* 266-67. The administrative law judge relied on this portion of the vocational expert's testimony in determining that

plaintiff can perform a significant number of jobs that exist in the national economy, even though he could not perform his past relevant work. *PAGEID* 240-41. The administrative law judge therefore did not err in relying on the vocational expert's testimony in this regard. *See Parks*, 413 F. App'x at 865 ("In order for a vocational expert's testimony in response to a hypothetical question to serve as substantial evidence in support of the conclusion that a claimant can perform other work, the question must accurately portray a claimant's physical and mental impairments. . . . Hypothetical questions, however, need only incorporate those limitations which the ALJ has accepted as credible.") (internal citations and quotations omitted).

**V.    Sentence 6 Remand**

Finally, plaintiff appears to seek remand under Sentence 6 of 42 U.S.C. § 405(g) for further administrative proceedings in light of new evidence. *Compare Statement of Errors*, pp. 10-11 (noting cases that were remanded under Sentence 6 of 42 U.S.C. § 405(g)), *with Statement of Errors*, p. 14 (seeking reversal under "the fourth sentence of 42 U.S.C. § 405(g)").[1] Plaintiff's argument is as follows:

> The post hearing MRI showed "1. At L4 L5, there is a moderately sized paracentral to oubarticular disc extrusion with inferior migration. There is effacement of the left lateral recess with moderate effacement of the left aspect of the thecal sac. The herniated disc mildly displaces the descending left L5 right nerve root as well as the

---

[1] Although the Court interprets plaintiff's *Statement of Errors* as seeking remand under Sentence 6, the better practice would be for plaintiff to expressly state that he seeks remand under Sentence 6 of 42 U.S.C. § 405(g). Plaintiff's failure to do so left the Commissioner and this Court guessing as to plaintiff's intentions. *See Commissioner's Response*, p. 12 ("Plaintiff appears to argue this Court should remand his case under sentence six of 42 U.S.C. § 4045(g) . . . .").

21

> remaining descending left-sided nerve roots.  There is mild
> bilateral foraminal stenosis. 2. At L5-S1 there is a small
> central disc protrusion without central canal or foraminal
> stenosis. (Tr. 185-86)
>
> As a result the Plaintiff required surgical intervention.
> (Tr. 85-86)
>
> The MRI and surgery were anticipated at the time of the
> hearing, the records were within 30 days of the decision
> and clearly relate top [sic] the relevant time period.

*Statement of Errors*, p. 11.  The Commissioner argues that plaintiff

has not established that these records are related to the relevant

time period.  *Defendant's Memorandum in Opposition*, p. 14.  The

Commissioner argues that the findings in the MRI and subsequent

surgery are unrelated to plaintiff's severe back impairments and are

the result of a new back injury that occurred after the administrative

decision.  *Id.*

A district court may, under certain circumstances, remand a case

under Sentence 6 of 42 U.S.C. § 405(g) for further administrative

proceedings in light of new and material evidence.  *Id.*

> The court . . . may at any time order additional evidence
> to be taken before the Commissioner of Social Security, but
> only upon a showing that there is new evidence which is
> material and that there is good cause for the failure to
> incorporate such evidence into the record in a prior
> proceeding[.]

42 U.S.C. § 405(g).  A plaintiff bears the burden under this portion

of the statute to demonstrate that the additional evidence presented

is both "new" and "material" and that there is "good cause" for the

failure to present this evidence to the administrative law judge.  *See*

*Hollon ex rel. Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 483 (6th

Cir. 2006).

Evidence is "new," for purposes of this provision, only if it was "not in existence or available to the claimant at the time of the administrative proceeding." *Sullivan v. Finkelstein,* 496 U.S. 617, 626 (1990).  Evidence is "material" only if there is "a reasonable probability that the [Commissioner] would have reached a different disposition of the disability claim if presented with the new evidence." *Sizemore v. Sec'y of Health & Human Servs.*, 865 F.2d 709, 711 (6th Cir. 1988).  *See also Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 174 (6th Cir. 1994).  A plaintiff may establish "good cause" by demonstrating a reasonable justification for the failure to acquire and present the evidence at the administrative hearing.  *Foster,* 279 F.3d at 357.  This standard applies to evidence submitted for the first time to the Appeals Council.  *Id.; Cline,* 96 F.3d at 148.

Although plaintiff's request to remand under Sentence 6 referred this Court to only four pages of medical evidence, plaintiff actually submitted nearly 200 pages of new medical records to the Appeals Council.  *See PAGEID* 39-227.  The records are dated between April 24, 2013, and May 21, 2014, *i.e.,* after the administrative decision was issued on March 29, 2013. Most of these records relate to treatment for a back impairment and back pain. On April 20, 2013, plaintiff reported to the emergency department at Mount Carmel West hospital after he stepped off a step and developed severe pain radiating into the left hip, posterior thigh, and calf.  *PAGEID* 225.  An MRI of the lumbar spine on April 24, 2013, revealed

23

> 1.  At L4 L5, there is a moderately sized left paracentral
> to oubarticular disc extrusion with inferior migration.
> There is effacement of the left lateral recess with
> moderate effacement of the left aspect of the thecal sac.
> The herniated disc mildly displaces the descending left L5
> right nerve root as well as the remaining descending left-
> sided nerve roots.  There is mild bilateral foraminal
> stenosis.
> 2.  At L5-S1 there is a small central disc protrusion
> without central canal or foraminal stenosis.

*PAGEID* 217.  On April 25, 2013, plaintiff underwent surgery for an L4-

L5 left herniated nucleus pulposus with associated concordant

radiculopathy and left lower extremity foot drop.  *PAGEID* 115-17.  In

a June 3, 2013 follow up appointment, it was noted that the

decompression was successful and without complications, but that

plaintiff had suffered damage to his L4 nerve root and still

experienced foot drop.  *PAGEID* 114.  A September 16, 2013 MRI of the

lumbar spine showed "full decompression of this disc fragment and the

spinal canal neural foramina looked great, as good as it could

possibly look considering this large disc rupture."  *PAGEID* 102.

Plaintiff was prescribed pain medication and referred to another

physician for consideration of a sympathetic block or steroid

injections for his pain.  *Id.*  Plaintiff received steroid injections

in early 2014, *PAGEID* 82, 98-99, but continued to complain of pain.

*PAGEID* 70-71.

The medical records submitted to the Appeals Council post-date

the March 29, 2013 decision of the administrative law judge.  The

Commissioner does not deny that these records are new or that good

cause exists for their late production.  The Commissioner does argue,

however, that the new evidence is not "material" because it does not

relate to the relevant time period and does not raise a reasonable probability that the administrative law judge would have reached a different decision. *Defendant's Memorandum in Opposition*, pp. 12-15.

Plaintiff represents that the "MRI and surgery were anticipated at the time of the hearing, the records were within 30 days of the decision and clearly relate top [sic] the relevant time period." *Statement of Errors*, p. 11. Although that representation is arguable, this Court concludes that the new medical evidence of a severe back impairment are sufficiently related to plaintiff's preexisting back impairments as to warrant remand under Sentence 6 of 42 U.S.C. § 405(g).

It is therefore **RECOMMENDED** that this action be **REMANDED** to the Commissioner of Social Security, pursuant to Sentence 6 of 42 U.S.C. § 405(g), for consideration of new and material evidence.

If any party seeks review by the District Judge of this *Report and Recommendation*, that party may, within fourteen (14) days, file and serve on all parties objections to the *Report and Recommendation*, specifically designating this *Report and Recommendation*, and the part thereof in question, as well as the basis for objection thereto. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy thereof. Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to

appeal the judgment of the District Court.  *See*, *e.g.*, *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that defendant waived appeal of district court's denial of pretrial motion by failing to timely object to magistrate judge's report and recommendation).  Even when timely objections are filed, appellate review of issues not raised in those objections is waived.  *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted)).

May 15, 2015                        ___*s/Norah McCann King*_____
                                       Norah M$^c$Cann King
                                    United States Magistrate Judge

26